UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
KEVIN DOWDY,

                            Plaintiff,

    -against-

P.A. HERCULES, U.S.H.P.S.; P.A. ANNESSA,
U.S.H.P.S.; DR. FRANCIN, M.D., U.S.H.P.S.; DR.
BORECKY, M.D., U.S.H.P.S.; DR. R. BEAUDOUIN,
M.D., U.S.H.P.S.; DOE #1; DR. D. MARINI, M.D.,
U.S.H.P.S.; K. BRUNO, RN, U.S.H.P.S.; PA-C S.
LIBERTY, U.S.H.P.S.; PA-C B. CINK, U.S.H.P.S.;
RPA-C B. SHULL, U.S.H.P.S.; E. HUGHES, APRN,
DC-FNP, U.S.H.P.S.; E. SWEATT, RPA, ASHA,
U.S.H.P.S.; DOE #2; DOE #3; DOES #4 TO #25; THE
FEDERAL BUREAU OF PRISONS; THE UNITED
STATES PUBLIC HEALTH SERVICE and THE
UNITED STATES OF AMERICA,

                           Defendants.
------------------------------------------------------------------ x

MEMORANDUM AND ORDER

07-CV-2488 (ENV) (LB)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★   JAN 1 5 2010
P.M.
TIME A.M.

VITALIANO, D.J.

      Plaintiff Kevin Dowdy, a federal prisoner appearing *pro se*, brings this action pursuant to the Federal Torts Claims Act, Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), and 42 U.S.C. §§ 1983 and 1985 against United States prison employees and medical staff, alleging negligence and violation of his Eighth Amendment rights. Specifically, Dowdy seeks $60 million in damages for defendants' alleged failure to properly diagnose and treat his tuberculosis and other health problems, which he claims has not only exacerbated his physical pain, but also may have left him sterile. Defendants now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56.[1] Defendants have

---

[1] The motion has been brought on behalf of the United States, the United States Bureau of Prisons ("USBOP"), the United States Public Health Service ("USPHS"), and all of the current and former



1

represented to the Court that they served plaintiff with the motion and accompanying documentation (Docket #48), but plaintiff has not filed any opposition.

The Court finds, for the reasons described below, that all of plaintiff's claims fail as a matter of law, with the exception of one Bivens claim against defendant Doe #3.

## Background

The following allegations are drawn from the text of the complaint and are considered true for the purposes of the motion.

Plaintiff alleges that he contracted tuberculosis while in custody at Lackawana County Prison in Pennsylvania.[2] (Compl. ¶¶ 13-14.) On June 18, 2004, plaintiff was transferred to the Metropolitan Detention Center in Brooklyn, New York ("MDC"). (Id. ¶ 16.) Upon arrival, Dowdy was given a medical examination by defendant physician assistant Hercules, but she "failed to recognize" his outward signs of having tuberculosis. (Id. ¶ 17.) Plaintiff also alleges that he received a "PPD" injection to test for the presence of the disease. (Id.) On June 20, 2004, defendant Doe #1, who plaintiff believes to be defendant Annessa (id. ¶ 19), examined the injection site and noticed an abnormal reaction, but improperly attributed it to prior vaccinations, not tuberculosis. (Id. ¶ 18.) Dowdy was then examined by defendant Dr. Francin, who, after stating her belief that Dowdy had the disease, ordered chest x-rays and administered a blood test. (Id. ¶ 19.) Although still showing symptoms two days later, plaintiff was moved from the medical intake unit to general population at MDC. (Id. ¶ 20.) He routinely complained to the prison staff who administered medication to inmates, but his pleas were ignored. (Id. ¶

---

employees of both agencies identified by name in the case caption, with the exception of defendant Shull, who was never served with process. Given the commonality of issues, however, the claims against Shull are dismissed with prejudice. See Parts 3b and 4b, infra.

[2] Plaintiff brought a separate civil rights action in the Middle District of Pennsylvania arising out of his alleged contraction of the disease and subsequent inadequate medical treatment at Lackawana County Prison, but his complaint was dismissed for failure to file within the applicable statute of limitations. See Dowdy v. Donate, 07-CV-0863 (M.D. Pa. filed Aug. 15, 2008) (J. Muir).

21.)

Two weeks later, Francin informed Dowdy that he had tuberculosis, and gave him the option of starting treatment immediately or waiting until he reached the facility where he would serve his sentence. (Id. ¶ 22.) When Dowdy requested that treatment begin as soon as possible, Francin "was not pleased" and no medication or "medical attention" was dispensed for another three weeks. (Id. ¶¶ 22-23.) At that point, Dowdy once again met with Francin, who explained that more blood tests were necessary and provided treatment consent forms. (Id. ¶ 24.) However, one day after this meeting, on or about July 30, 2004, Dowdy was transferred out of MDC to the Federal Correctional Institution in Raybrook, New York ("Raybrook"). (Id. ¶ 25.)

Upon arrival, Dowdy explained to defendant physician assistant Doe #2 that he had received no treatment for his tuberculosis, and that he was suffering from severe testicular pain. (Id. ¶ 26.) Despite the efforts of his mother and an outside doctor to contact Raybrook on his behalf, Dowdy did not receive any treatment for approximately four more weeks. (Id. ¶¶ 26-27.) Over the course of the following six months, Dowdy took a variety of medications for his multiple ailments, but such treatment either had no effect or exacerbated his pain. (Id. ¶¶ 27-29.) Plaintiff filed numerous administrative requests to remedy this "medication experimentation", but he did not get any relief. (Id. ¶ 29.) After nine months, he saw an outside urologist, who examined what turned out to be a testicular cyst and ordered him to sleep with heating pads to alleviate the pain. (Id. ¶ 32.) Although Dowdy requested permission to have a heating pad, defendant Doe #3, the assistant warden of Raybrook, refused. (Id.)

Dowdy claims to be in poor health, suffering from severe pain and "fear" that his delay and/or lack of treatment has led to sterility. (Id. ¶¶ 33-34.) He asserts that defendants, both "as individuals" and in their "official capacities", "maliciously" and "negligently" misdiagnosed his condition (id. ¶ 2), and withheld necessary medical treatments. (Id. ¶ 1.) On

May 4, 2007, he filed the complaint in the current action seeking $10 million in compensatory damages and $50 million in punitive damages. (Id. ¶¶ 35-38.)

### Discussion

The Court discerns from the complaint four alleged theories of liability: (1) the failure of Hercules and Doe #1 at MDC to immediately diagnose tuberculosis; (2) the delay of treatment by Francin at MDC, Doe #2 at Raybrook, and other unspecified defendants; (3) the inadequacy of treatment provided by unspecified defendants; and (4) the denial of the pain-alleviating heating pad by Doe #3 at Raybrook. Aside from Hercules, Francin, and Does #1-3, no defendants in the case caption are referenced or discussed in the body of the complaint.

The Court is mindful that *pro se* submissions are "held to less stringent standards than formal pleadings drafted by lawyers", Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted), particularly when allegations concern civil rights violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); . McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). Consequently, Dowdy's *pro se* complaint must be read liberally and interpreted as raising the strongest arguments it suggests. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006). In light of this "special solicitude", Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994), the Court concludes that Dowdy's complaint does state potentially valid claims for relief. Dowdy not only alleges that defendants' inadequate medical attention deprived him of his constitutional right to be free of cruel and unusual punishment, but also that defendants were simply incompetent, effectively committing medical malpractice by "negligently . . . withholding necessary medical treatment." (Compl. ¶ 2.)

1. <u>Standards of Review</u>

Fed R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed

4

factual allegations" in support of his claims, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' . . . will not do.'" Id. (quoting Twombly, 550 U.S. at 555); see also In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 555 U.S. at 557).

To survive a Fed. R. Civ. P. 12(b) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 555 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotations omitted); see Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting Twombly to require a "plausibility standard" that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible") (emphasis omitted), rev'd on other grounds, 129 S. Ct. 1937 (2009). On a Rule 12(b)(6) motion, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Int'l Audiotext Network, Inc. v. Am. Tel..& Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

Rule 12(b)(1) motions to dismiss based on lack of subject matter jurisdiction,

however, do not require the court to draw all reasonable inferences in favor of plaintiffs. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). Further, "[i]n resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007) (quoting Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002); see LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999) (noting that "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings").

2. Plaintiff's Failure To Oppose Defendants' Motion

Where, as here, the plaintiff does not oppose a Rule 12 motion, the district court still must determine whether the complaint is sufficient to state a claim on which relief may be granted. McCall v. Pataki, 232 F.3d 321, 322-323 (2d Cir. 2000); Pickett v. Leclaire, 2009 U.S. Dist. LEXIS 96947, at *3 (S.D.N.Y. Oct. 13, 2009). If a pleading contains sufficient factual matter, accepted as true, to show potential entitlement to relief, "the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." McCall, 232 F.3d at 323.

Defendants have, in the alternative, moved for summary judgment, and in that connection have submitted a declaration and Local Rule 56.1 and 56.2 statements. Pursuant to Fed. R. Civ. P. 12(d), the Court has discretion to consider additional materials and "convert a motion for judgment on the pleadings to a motion for summary judgment if the Court deems it necessary to refer to matters outside of the pleadings." In re Risk Mgmt. Alternatives, Inc., 208 F.R.D. 493, 500 (S.D.N.Y. 2002); see Mitchell v. Dep't of Corr., 2008 U.S. Dist. LEXIS 24830, at *9-*12 (S.D.N.Y. Feb. 20, 2008). Here, however, in light of plaintiff's incarceration, his *pro se* status, and the lack of any discovery, the Court declines to convert defendants' motion. See

6

Perez v. Hawk, 302 F. Supp. 2d 9, 16 (E.D.N.Y. 2004) (refusing to convert to summary judgment motion where plaintiff was *pro se* prisoner asserting Bivens claim for inadequate medical care); see also Meadows v. Planet Aid, Inc., 2009 U.S. Dist. LEXIS 104671, at *21 (E.D.N.Y. Nov. 4, 2009) (finding conversion to summary judgment inappropriate "since Plaintiff is *pro se* and has not yet had an opportunity to conduct any discovery").

3. Tort Claims

    a) *Tort Claims Against USBOP, USPHS, and Individuals In Their Official Capacity*

It is well established that "the United States, as sovereign, is immune from suit save as it consents to be sued." Lehman v. Nakshian, 453 U.S. 156, 160, 101 S. Ct. 2698, 2701 (1981) (internal quotation marks and citations omitted). Therefore, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994), as such waiver is a "prerequisite" for subject matter jurisdiction in federal district courts. United States v. Mitchell, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965 (1983); Presidential Gardens Assocs. v. United States, 175 F.3d 132, 139 (2d Cir. 1999). Moreover, sovereign immunity also extends to officers of government employees when they "act in their official capacities", Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005), because such actions are "essentially a suit against the United States." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

The Federal Tort Claims Act ("FTCA") is a limited waiver of sovereign immunity applying to "claims against the United States, for money damages . . . for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The FTCA makes a lawsuit against the United

States itself the *exclusive* remedy for common law tort actions against federal agencies or employees acting on behalf of the government. 28 U.S.C. § 2679(b)(1); see Rivera v. United States, 928 F.2d 592, 608-09 (2d Cir. 1991); Rodriguez v. United States, 2001 U.S. Dist. LEXIS 19876, at *6 (E.D.N.Y. Nov. 5, 2001); see also Baez v. Bureau of Prisons, 2004 U.S. Dist. LEXIS 8183, at *21-*22 (S.D.N.Y. May 11, 2004) (noting that the FTCA "requires that suit be brought against the United States itself, not against individual defendants or agencies"). To the extent that the complaint states causes of action sounding in tort against defendant agencies USBOP and USPHS, or against any of the individual defendants acting in their official capacity -- i.e., acting within the scope of their employment -- those claims are dismissed with prejudice for lack of subject matter jurisdiction. See, e.g., Sereika v. Patel, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) (dismissing FTCA claims against Bureau of Prisons for lack of subject matter jurisdiction).

   b) *Tort Claims Against Individual Defendants in their Non-Official Capacities*

As implied by the text of the FTCA, lawsuits against federal employees arising out of actions taken *outside* of the scope of their federal employment would face no sovereign immunity obstacles, because such claims are against those individuals, not the United States. See Gutierrez De Martinez v. Lamagno, 515 U.S. 417, 420, 115 S. Ct. 2227, 2229 (1995) ("[I]f the [federal] employee was acting outside the scope of his employment, the plaintiffs' tort action could proceed against him."). Here, although Dowdy purports to bring claims against defendants both in their "official capacities" and "as individuals" (Compl. ¶¶ 1-4), the complaint does not allege any common law tort committed by any individual defendant -- all of whom are USBOP and USPHS employees -- separate and apart from acts or omissions within the scope of their

employment duties in treating prisoners and/or making decisions regarding their welfare.[3] Moreover, there is simply no indication that plaintiff intended to bring tort claims either (a) based on conduct outside of the scope of these defendants' employment, or (b) against any "Doe" defendants not employed by the federal government. Accordingly, any and all tort claims against defendants in their individual capacities are dismissed.

### c) FTCA Claims Against The United States

Although the United States is the proper named defendant in a FTCA claim, the Court is nonetheless without subject matter jurisdiction to hear Dowdy's claim on the merits because, under the FTCA, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). This administrative exhaustion requirement is jurisdictional and cannot be waived. See Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (citing McNeil v. United States, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984 (1993)). The burden is on plaintiff to demonstrate subject matter jurisdiction in compliance with the FTCA's requirements. In re Agent Orange Prod. Liab. Litig., 818 F.2d 210, 214 (2d Cir. 1987); see also Adelke v. United States, 355 F.3d 144, 153 (2d Cir. 2004) (noting that this "procedural hurdle applies equally to litigants with counsel and to those proceeding *pro se*").

On April 20, 2007, Dowdy filed a "Form 95" administrative claim against MDC, seeking $25,000 in damages for personal injury arising out of the "Medical Staff's negligence and refusal to begin immediate treatment of the TB". (Declaration of Adam M. Johnson, Ex. C.) Dowdy listed the date of the incident giving rise to his claim as "on[ ] or about 6/20/04".

---

[3] The simple fact that plaintiff has alleged that defendants have engaged in *intentional* torts "does not compel the conclusion that the employee was acting outside the scope of employment" under New York law, which applies to the instant FTCA claims. Griebsch v. Weaver, 2005 U.S. Dist. LEXIS 44250, at *7 (N.D.N.Y. Sept. 16, 2005).

Therefore, he was required to file his administrative claim by June 20, 2006 to comply with the FTCA. Even if the Court were to disregard plaintiff's self-report of the date of injury, a FTCA claim accrues "at the time the injury or harm is inflicted, or when the plaintiff knows both the existence and cause of his injury." Moreno-Ortiz v. United States, 2009 U.S. Dist. LEXIS 14396, at *6 (S.D.N.Y. Feb. 24, 2009) (citing United States v. Kubrick, 444 U.S. 111, 120, 100 S. Ct. 352, 358 (1979)). Accepting the allegations in the complaint as true, plaintiff was aware of the existence and cause of his injuries at MDC by Autumn 2004, when he was transferred to Raybrook without commencement of treatment. (Compl. ¶ 26.) There is no evidence of any other Form 95 filed by plaintiff or of any administrative claim relating to his treatment. In short, Dowdy cannot escape his failure to timely file an administrative claim based on the conduct at issue in this lawsuit. Consequently, the Court is without jurisdiction to hear his FTCA claims against the United States, and such claims are hereby dismissed with prejudice. See, e.g., Sereika, 411 F. Supp. 2d at 409-10 (dismissing FTCA claim for failure to present claim to the Bureau of Prisons within the two year statute of limitations).

4. Constitutional Claims

Plaintiff also invokes Bivens, which permits damages actions against individual federal officers who violate clearly established constitutional rights while acting under color of federal law. 403 U.S. 388; Robinson, 21 F.3d at 510. Specifically, he alleges an unjustified denial of proper medical care, which constitutes a violation of the Eighth Amendment where "prison official[s] acted with 'deliberate indifference' to the inmate's 'serious medical needs.'" Sereika, 411 F. Supp. 2d at 404 (quoting Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291(1976)). However, Bivens claims are only permitted when brought against federal officials in their individual capacity, because the United States has not waived sovereign immunity for "constitutional tort claims against the United States, its agencies, or federal employees sued in

their official capacities." Hawk, 302 F. Supp. 2d at 18; see Robinson, 21 F.3d at 510 (dismissing Bivens claims against federal employees acting in their official capacities on grounds of sovereign immunity); Sereika, 411 F. Supp. 2d at 402 (noting that "a Bivens claim against a federal agency is precluded"). Accordingly, any purported Bivens claims against the United States, USPHS, USBOP, or any individual defendant in their official capacity are dismissed.

    a)  *Claims Against Defendants Not Discussed In The Complaint*

Although plaintiff purports to sue more than 30 separate individual defendants, his complaint only specifically discusses the actions of five: Hercules, Francin, and Does #1, 2, and 3. "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." Iqbal, 129 S. Ct. at 1948 (emphasis added); see Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) (noting that personal involvement in constitutional deprivation is a prerequisite to Bivens recovery). The requisite personal involvement can be demonstrated by evidence that the defendant (1) participated directly in the alleged constitutional violation; or (2) had knowledge of the violation but failed to remedy the wrong; or (3) created the policy or custom under which the violation occurred; or (4) was grossly negligent in supervising subordinates who caused the violations; or (5) deliberately failed to act on information indicating that deprivations were taking place. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Obviously, where the complaint does not reference individuals, much less their personal involvement in a deprivation, claims against them should be dismissed for failure to satisfy pleading requirements. See Garcia v. Watts, 2009 U.S. Dist. LEXIS 84697, at *46-*47 (S.D.N.Y. Aug. 27, 2009), adopted, 2009 U.S. Dist. LEXIS 84692 (S.D.N.Y. Sept. 1, 2009) ("Where, as here, a complainant names a defendant in the caption but the complaint contains no substantive allegation against the defendant, dismissal of the complaint is appropriate"); see also

Robinson v. Lindsay, 2009 U.S. Dist. LEXIS 86117, at *8 (E.D.N.Y. Sept. 21, 2009) (dismissing Bivens claim for inadequate medical treatment where prisoner failed to allege named defendant's personal involvement in deprivation of constitutional rights); Hawk, 302 F. Supp. 2d at 19 (same). Accordingly, Dowdy's Bivens claims against any defendant named in the case caption who is not specifically discussed in the text of the complaint are dismissed.

However, the door is not forever barred. Plaintiff may, if he can, amend the complaint to plead facts sufficient to give rise to an inference that other specific individuals were personally involved in the claimed violation of his constitutional rights, and to provide a "short and plain" description of what each defendant allegedly did or failed to do. Fed. R. Civ. P. 8(a)(2); see Shomo v. City of New York, 2009 U.S. App. LEXIS 23076, at *13 (2d Cir. Sept. 2, 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)) (noting that a *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"); Hawk, 302 F. Supp. 2d at 33 (same). However, for reasons discussed below in Part 4b, certain of Dowdy's original Bivens claims have been dismissed with prejudice, for they are not capable of valid amendment.

  b) *Claims Against Hercules, Francin, Does #1 and #2, and USPHS Employees*

The majority of the defendants listed in the case caption -- and every non-"Doe" individual defendant -- are members of the USPHS. However, plaintiff cannot bring Bivens claims against any individual employees of the USPHS for actions that they take within the scope of their medical duties because Congress has provided them with absolute immunity. Section 233(a) of the Public Health Service Act makes the FTCA the exclusive remedy for "damage for personal injury . . . resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service

while acting within the scope of his office or employment". 42 U.S.C. § 233(a); see Geralds v. Patel, 2009 U.S. Dist. LEXIS 14721, at *2-*3 (E.D.N.Y. Feb. 25, 2009); Brown v. McElroy, 160 F. Supp. 2d 699, 703 (S.D.N.Y. 2001). The Second Circuit interprets § 233(a) to extend to constitutional violations as well, shielding USPHS employees from Bivens actions arising out of their employment duties. Cuoco v. Moritsugu, 222 F.3d 99, 107-08 (2d Cir. 2000); see also Wallace v. Dawson, 302 Fed. Appx. 52, 54 (2d Cir. 2008) ("Because [defendant] is a dentist and member of the Public Health Service, [plaintiff] is barred from seeking Bivens damages for injuries allegedly caused by [defendant] within the scope of his employment.").

The complaint lists defendants Hercules, Francin, and Annessa (presumably Doe #1) as employees of the USPHS.[4] Doe #2 is described as a physician assistant at Raybrook. Dowdy's allegations with regard to the conduct of these defendants all clearly refer to acts or omissions within the scope of their job and medical duties in attending to a prisoner's health and welfare, including providing examinations and rendering treatment. As a result, Hercules, Francin, Annessa/Doe #1 and the other USPHS employees targeted by Dowdy are entitled to statutory immunity under § 233 and, therefore, the Bivens claims against them are dismissed with prejudice.

c) *Claim Against Doe #3*

The only Bivens claim yet to be addressed -- and which defendants fail to discuss in their moving papers -- is based on Dowdy's allegation that Doe #3, an assistant warden at Raybrook, refused to let him use heating pads for his testicular pain, in direct contravention of the urologist's "order" to do so. (Compl. ¶ 32.) Although a prisoner's constitutional right is only to the receipt of "medical care -- not the type or scope of medical care which he personally

---

[4]   On this jurisdictional issue, the Court also considers declarations by Hercules and Annessa stating that they were employed by USPHS at the time of the alleged incidents. (Johnson Decl. Exs. L, M.)

desires", United States ex. rel. Hyde v. McGinnis, 429 F.2d 864, 867-68 (2d Cir. 1970) (quoting Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968), "a deliberate indifference claim may lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." Johnson v. Wright, 412 F.3d 398, 404 (2d Cir. 2005). As an assistant warden, Doe #3 would not fall within the scope of the § 233 absolute immunity. Plaintiff has therefore sufficiently pled a potential Bivens claim against Doe #3, and this one cause of action survives defendants' motion to dismiss.[5]

5. § 1983 Claims

Plaintiff purports to bring civil rights claims against defendants pursuant to 42 U.S.C. § 1983, but this statute "provides relief only against defendants who act under color of state, not federal, law." Khan v. United States, 271 F. Supp. 2d 409, 412 (E.D.N.Y. 2003) (citing Wheeldin v. Wheeler, 373 U.S. 647, 650, 83 S. Ct. 1441, 1444 (1963). As nothing in the complaint indicates that plaintiff is making any claims against any state actors, his § 1983 are dismissed. Cf. Spinale v. U.S. Dep't of Agric., 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009), aff'd, 2009 U.S. App. LEXIS 26959 (2d Cir. Dec. 11, 2009) ("Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under [Bivens].").

6. § 1985 Claims

Plaintiff also purports to bring claims pursuant to 42 U.S.C. § 1985(3), which requires proof that: (1) a conspiracy existed; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection or equal privileges and immunities

---

[5] Since the Court has dismissed plaintiff's other claims on a variety of grounds, it is not necessary to address defendants' arguments that plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). Defendants do not specifically argue that the claim against Doe #3 for testicular pain is precluded by the PLRA.

under the laws; and a showing that (3) an act in furtherance of the conspiracy occurred; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. See United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825 (1983). Moreover, a § 1985(3) claim requires demonstration of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). The complaint is devoid of any allegations of conspiracy or discriminatory intent. Accordingly, plaintiff's § 1985 claims are dismissed.

7. § 1331 Claims

Finally, plaintiff seeks to assert an independent cause of action pursuant to 28 U.S.C. § 1331. However, § 1331 is purely a grant of jurisdiction to the district courts that neither provides any basis for substantive relief nor waives sovereign immunity so as to reanimate plaintiff's claims that, as discussed above, see supra Part 3, fail due to lack of subject matter jurisdiction. See Mack v. United States, 814 F.2d 120, 122 (2d Cir. 1987); Zynger v. Dep't of Homeland Sec., 615 F. Supp. 2d 50, 56 (E.D.N.Y. 2009).

## Conclusion

For the foregoing reasons, all of plaintiff's claims are dismissed except for his Bivens claim against Doe #3. Plaintiff is permitted to amend his complaint to assert additional Bivens claims. If he chooses to do so, he must name the individual defendants involved (or identify them as "Doe" and provide sufficient information to permit defendants to identify that person), and as best he can describe in detail how they participated in the deprivation of his constitutional rights. Plaintiff is reminded that alleging mere negligence is insufficient, since his FTCA claims are jurisdictionally barred. Rather, he must present sufficient factual allegations to state a plausible claim that each identified defendant was *personally involved* in acting with "deliberate indifference" to his "serious medical needs". Further, the amended complaint must

be captioned "Amended Complaint," and shall bear docket number 07-CV-2488. It must be submitted to the Court within 30 days from the date of this Order. If plaintiff fails to produce an amended complaint within that time period, the action will proceed solely on the Bivens claim against Doe #3, all other claims having been dismissed.

In light of the Court's determination that plaintiff may amend his complaint to allege additional facts, defendants' motion to transfer venue to the Northern District of New York is granted but stayed for 45 days from the date of this Order. Upon the expiration of the stay, the Clerk of the Court is directed to transfer this matter to the United States District Court in the Northern District of New York and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
January 13, 2010

ERIC N. VITALIANO
United States District Judge